**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LARRY ATKINSON, EUGENE WALKER, JASON GREENE, GIOVANNI WILLIAMS, CHARLES CROSS, and TERRILL CLAY, on behalf of themselves and others similarly situated, | Case No. 1:22-cv-04127 |
| Plaintiffs, | Honorable Martha M. Pacold |
| v. | |
| SUPER EGO HOLDINGS, LLC, FLOYD, INC., KORDUN EXPRESS, INC., ROCKET EXPEDITING, LLC, JORDAN HOLDINGS, INC. d/b/a JHI TRANSPORT, REX TRUCKING, INC., HAIDAR DAWOOD LLC, and ALEKSANDAR MIMIC, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendants, Super Ego Holdings, LLC, Floyd, Inc., Kordun Express, Inc., Rocket Expediting, LLC, Jordan Holdings, Inc., Rex Trucking, Inc., Haidar Dawood, LLC and Aleksandar Mimic, respectfully submit this memorandum in support of their motion to dismiss.

**I.     INTRODUCTION**

At bottom, this case is a compensation dispute between a motor carrier and independent contractor drivers. And while Plaintiffs have asserted a smattering of different claims, each rests on a fundamental misreading of the plain language of the parties' agreements. The parties' written agreements unambiguously stated that Defendants[1] only "agree[d] to pay 88% of load pay offered"

---

[1] Plaintiffs allege all Defendants are alter egos of one another and generally make all allegations and bring all claims against all Defendants collectively. Defendants dispute this. However, consistent with Plaintiffs' Amended Complaint, this brief generally refers to Defendants collectively, except as to the claims against

to Plaintiffs by Defendants. Despite that, Plaintiffs allege that Defendants breached their contract, violated the Truth-in-Leasing Act (TILA) Regulations, and violated consumer protection laws when it did not pay Plaintiffs 88% of the gross revenue Defendants received from their shipper and broker customers. *See Am. Compl.*, ¶¶ 2, 45 (ECF No. 21). Of course, that is not what Plaintiffs' agreement says Plaintiffs were entitled to. And the only loads identified in the Amended Complaint that allegedly involve underpayments actually show that Defendants paid Plaintiffs 88% of the load pay Defendants offered. In fact, Plaintiffs *never* allege that Defendants failed to pay the rates Defendants offered to Plaintiffs. Plaintiffs cannot escape the plain language of the parties' agreement. Because Counts I, II, and III are all premised on Plaintiffs' incorrect interpretation of the contract, the Court should dismiss them. Further, Counts VI and VII against Defendant, Aleksandar Mimic, should be dismissed because he is not an employer under either the FLSA or Illinois Wage Payment and Collections Act (IWPCA).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are non-Illinois residents over-the-road truck drivers who provide transportation services throughout the United States as owner operators. *Am. Compl.*, ¶¶ 35. Each signed an independent contractor agreement with either Rocket Expediting LLC or Haidar Dawood LLC (Independent Contractor Agreement). *See Am. Compl.*, ¶¶ 7-12; Independent Contractor Agreement, ECF No. 21-3 at 3.[2] Plaintiffs also signed an Equipment Lease to Purchase Agreement (Equipment Lease). *Am. Compl.*, ¶¶ 36, 47; Equipment Lease, ECF No. 21-4 at 5.

Under the Independent Contractor Agreement, Defendants "agree[d] to pay 88% of load

---

Aleksandar Mimic. Defendants reserve their right to challenge Plaintiffs' Amended Complaint allegations with actual facts and evidence.

[2] Plaintiffs' Amended Complaint refers to the Independent Contractor Agreement as the "Lease Agreement."

pay offered, minus applicable escrow deductions, cargo & liability insurance, cash advances, fines, violations, damage payments, deductibles, fuel card payments and any/all agreed upon damage/payments." *Id.*, ¶ 43; Independent Contractor Agreement, ECF No. 21-3 at 3. Similarly, when Plaintiffs signed the Equipment Lease, they agreed to "pay to Lessor, 12% commission on all loads as offered to [Plaintiffs]." *Id.*, ¶ 47; Equipment Lease, ECF No. 21-4 at 5.

Even though their agreements plainly stated that they would receive 88% of the load pay Defendants offered to them, Plaintiffs allege Defendants should have paid them "88% rate of gross receipts for each load"—i.e., 88% of the rate Defendants charged its own customers, rather than 88% of the rate Defendants offered Plaintiffs. *Am. Compl.*, ¶ 45. Plaintiffs rely on this misreading of their agreements to bring several claims against Defendants, including: (1) breach of contract, (2) violations of the Truth in Leasing Act (TILA), (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), (4) civil conspiracy, (5) common law fraud, (6) violations of the FLSA and (7) violations of the IWPCA. Defendants now move to dismiss Counts I-III in whole and Counts VI and VII in part for the reasons explained below.

## III.    ARGUMENT

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court accepts all well-pleaded facts as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. The Court can consider agreements referenced in the pleadings without converting the motion into a summary judgment motion. *See Pennington v. ZionSolutions, LLC*, 2013 WL 3895263, at *1 n.2 (N.D. Ill. July 29, 2013).

3

### A.    The Parties' Written Agreements Foreclose Plaintiffs' Breach of Contract Claim

To assert a breach of contract, Plaintiffs must allege: (1) the contract existed, (2) the Plaintiffs performed, (3) Defendants breached, and (4) damages. *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020). Illinois adheres to the "four corners rule," under which "'[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (1999) (citation omitted). In other words, a contract "speaks for itself, and the intention with which it was executed must be determined from the language used [and] is not to be changed by extrinsic evidence.'" *Id.*

### 1.    Plaintiffs have not alleged breach or damages on their compensation breach of contract theory.

The plain language of the parties' agreements—and Plaintiffs' own Amended Complaint–show that Plaintiffs cannot establish breach or damages. In their agreements, Defendants agreed to pay Plaintiffs "88% of load pay *offered*." *Am. Compl.*, ¶ 46 (emphasis added); Independent Contractor Agreement, ECF No. 21-3 at 3; Equipment Lease, ECF No. 21-4 at 5. Plaintiffs concede this in their Amended Complaint. *Am. Compl.*, ¶¶ 46, 47, 139, 140. In fact, the only examples of "underpayment" Plaintiffs include in their Amended Complaint prove Defendants *did* pay 88% of the load pay Defendants offered:

- In paragraph 54, Plaintiffs allege Defendants offered Atkinson a trip for $3,500 load pay and Defendants paid 88% of the offered amount. *Am. Compl.*, ¶ 54.

- In paragraph 60, Plaintiffs allege Defendants offered Walker a trip for $1,700 load pay and Defendants paid 88% of the offered amount. *Am. Compl.*, ¶ 60.

- In paragraph 61, Plaintiffs allege Defendants offered Greene a trip for $1,500 load and Defendants paid 88% of the offered amount. *Am. Compl.*, ¶ 61.

The "four corners" of the parties' agreements are clear. Defendants paid Plaintiffs

according to the parties' agreement, and Plaintiffs make no allegation that, for any trip, Defendants ever failed to pay "88% of load pay *offered*." Instead, Plaintiffs allege that Defendants breached the contracts by failing to pay them based on the "price[s] that Defendants' customers actually paid to Defendants." *Am. Compl.*, ¶ 145. But nothing in the parties' agreements support Plaintiffs' position. The parties agreed in the Independent Contractor Agreement that Defendants would only pay "88% of load pay *offered*" to Plaintiffs. *Am. Compl.*, ¶ 46; Independent Contractor Agreement, ECF No. 21-3 at 3.

Agreeing to pay "88% of load pay *offered*" by Defendants is different from Plaintiffs' assertion that they should receive 88% of the gross revenue Defendants received from the broker or shipper. The unambiguous language of the Independent Contract Agreement alone forecloses Plaintiffs' claim. *Page v. Alliant Credit Union*, No. 19-CV-5965, 2021 WL 1546437, at *2 (N.D. Ill. Apr. 20, 2021) ("[w]hen an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.") (*quoting Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). And the language of the parties' Equipment Lease, which mimics the compensation provision in the parties' Independent Contractor Agreements, reinforces this conclusion. The Equipment Lease states, "Lessee [Plaintiffs] shall pay to Lessor [Defendants], 12% commission on all loads as offered to Lessee under this agreement." *Am. Compl.*, ¶ 47; Equipment Lease, ECF No. 21-4 at 5. The Equipment Lease makes clear that Plaintiffs were owed only 88% of the amount *Defendants* offered *to Plaintiffs*, not 88% of what *Defendant's customers* offered to *Defendants.* It is impossible to square Plaintiffs' position with the plain terms of the parties' agreements. As a result, The Court should dismiss Plaintiffs' claim because Defendants have not breached the agreements and Plaintiffs suffered no damage. *Morse*

*v. Donati*, 136 N.E.3d, 1043, 1049-50 (Ill. App. Ct. 2019).[3]

### 2. Plaintiffs have not alleged a breach of contract claim on their deductions and escrow theory.

Plaintiffs assert Defendants breached the parties' written agreements by making "unauthorized deductions" and "failing to return [Plaintiffs'] escrow." *Am. Compl.*, ¶ 146. While Plaintiffs purport to identify "illegal" deductions they claim Defendants did not adequately disclose under TILA or that violated the IWPCA, *Am. Compl.*, ¶¶ 88-101, Plaintiffs fail to identify a specific deduction that Defendants made that Plaintiffs allege violated the parties' agreements. Nor can they. The Independent Contractor Agreement authorized Defendants to make deductions from Plaintiffs' settlements. *See, e.g.*, Independent Contractor Agreement, ECF No. 21-3 at 3-4, 8. Because Plaintiffs fail to allege any deduction violated the parties' written agreements, and because the agreements allow Defendants to make deductions, the Court should dismiss Plaintiffs' contract claim premised on deductions with prejudice. *Page*, 2021 WL 1546437, at *2.

Likewise, Plaintiffs fail to plausibly allege a breach of contract claim based on Defendants' purported failure to return escrow. Plaintiffs' theory assumes they had an unfettered right under the parties' contracts to the full return of their escrow upon termination, but they point to no

---

[3] In their Amended Complaint, Plaintiffs also cite a news article to allege that it is common practice in the motor carrier industry to pay owner-operators based on a percentage of the revenue received by the motor carrier from the shipper or broker. *Am. Compl.*, ¶¶ 48-49. But that article merely confirms the variety of compensation models in the industry. Indeed, it explicitly highlights a percentage-based model that does not appear to be based on the rates the carrier charges its customers, but rather is based on a "lump-sum format [that] present[s] to owner-operators a single revenue figure for any given load." https://www.overdriveonline.com/business/article/15066619/compensation-percentage-pay-dominates-among-ownerops. The article indicates the example model is "a 'translator from how the customer's deal is structured into how the owner-operator is compensated.'" Regardless, Plaintiffs' appeal to custom or industry practice is irrelevant here because the parties' agreement expressly provided Plaintiffs would receive 88% of the load pay offered by Defendants, not 88% of the revenue Defendants' received. *Page v. Alliant Credit Union*, 52 F.4th 340, 347 (7th Cir. 2022) ("The fact that some institutions disclosed that they used the available-balance method differently or more clearly does not prove that the Agreement promised to use the ledger-balance method or that the Agreement is ambiguous.").

6

provision that supports that position. In fact, the Independent Contractor Agreement expressly provides that "ALL escrow funds may be held for a minimum of 45 days after termination of the Agreement (by either party and for any reason) to insure payment of INDEPENDENT CONTRACTOR'S obligations, including quarterly Fuel Tax Returns, cargo claims, liability claims, advances, equipment rental costs, fuel card advances, fuel or any other costs which are the sole responsibility of INDEPENDENT CONTRACTOR." Independent Contractor Agreement, ECF No. 21-3 at 3-4. Because Plaintiffs failed to allege facts demonstrating they were entitled to the return of any of their escrow, the Court should dismiss Plaintiffs' breach of contract claim premised on this theory.

### 3. The Court should dismiss any breach of contract claim premised on the implied duty of good faith and fair dealing.

Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. S*ee, e.g.*, *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000). To use the duty of good faith and fair dealing, a party must show that the contract vested the other party with discretion in performing an obligation under the contract and the other party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the parties' reasonable expectations. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-45 (7th Cir. 1992).

The covenant of good faith and fair dealing does not apply here. Plaintiffs do not allege that Defendants were given broad discretion under the parties' agreements or that Defendants acted unreasonably or arbitrarily in exercising discretion. *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003). Nor can Plaintiffs use the doctrine to rewrite the agreements because Illinois law holds that an implied covenant of good faith cannot overrule or modify the express terms of a contract. *Id.* at 395-96. The parties' agreements provide that Plaintiffs would

receive 88% of the load pay Defendants offered. Plaintiffs own allegations show Defendants paid them 88% of the load pay offered. The covenant of good faith and fair dealing does not apply.[4]

### B.    Plaintiffs' Under-Compensation Theory Under TILA Fails

The TILA Regulations apply when a motor carrier seeks to "perform authorized transportation in equipment it does not own" by leasing from the owner of the equipment. 49 C.F.R. § 376.11. The regulations mandate "a written lease" between the motor carrier and the owner of the equipment and require certain disclosures, but do not dictate the parties' terms. *Id.* §§ 376.11(a), 376.12. Under 49 U.S.C. § 14704(a)(2), an owner-operator may recover "damages sustained . . . as a result of an act or omission" by a motor carrier in violation of TILA regulations.

Echoing their contract claim, Plaintiffs allege that Defendants' failure to pay them 88% of the gross revenue received from customers also violates the TILA Regulations. *Am. Compl.*, ¶¶ 34, 158-162; 49 C.F.R. § 376.12(d). The Independent Contractor Agreement disclosed how Defendants would pay Plaintiffs, in compliance with 49 C.F.R. § 376.12(d). The Independent Contractor Agreement provided that Plaintiffs would receive 88% of the load pay offered, not 88% of the gross revenue received from the customer. Plaintiffs admit they received 88% of the load pay offered. The Court should dismiss Plaintiffs' claim under 49 C.F.R. 376.12(d).

Nor can Plaintiffs recover under Section 376.12(g) because that provision only applies if Plaintiffs' compensation is "based on a percentage of the gross revenue for a shipment." 49 C.R.F.

---

[4] Without citing to any provision of any of the parties' contracts, Plaintiffs essentially allege Defendants had the discretion to, and should have, disclosed the prices Defendants charged to its customers. *Am. Comp.*, ¶ 147. But this argument fails for the same reason Plaintiffs' breach of contract claim fails generally. Plaintiffs were not entitled to 88% of the price Defendants charged their customers. Rather, Plaintiffs were only entitled to receive 88% of the load pay offered by Defendants, and Plaintiffs' own allegations confirm that is exactly what they received. *RBS Citizens, Nat. Ass'n v. RTG-Oak Lawn, LLC*, 407 Ill. App. 3d 183, 191, 943 N.E.2d 198, 207 (2011) ("[W]e cannot find that RBS exercised any degree of broad discretion as required for a claim of a breach of the duty of good faith and fair dealing, given that the unambiguous interest language did not grant RBS any discretion as to how interest would be computed or charged.")

§ 376.12(g). Plaintiffs compensation was not based on a percentage of gross revenue that any Defendant received from a broker or shipper. Instead, Defendants agreed to pay Plaintiffs "88% of load pay offered" by Defendants and accepted by Plaintiffs. For these reasons, 49 C.F.R. 376.12(g) does not apply.

### C.     Plaintiffs' Consumer Fraud Claim Should Be Dismissed

Under the Consumer Fraud Act, a plaintiff must show: "(1) a deceptive act or practice; (2) intent by the defendant that the plaintiff rel[ied] on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the plaintiff's injury was proximately caused by the fraud complained of." *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 62 (Ill. App. Ct. 2006). For non-consumers, the plaintiff must allege facts showing that "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Lefebvre Intergraphics, Inc. Sanden Machine, Ltd*., 946 F. Supp. 1358, 1368 (N.D. Ill. 1996).

### 1.     Plaintiffs' Consumer Fraud Act claim is merely a contract claim under a different name.

A breach of contract is not actionable under the Consumer Fraud Act. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005); *see also Song*, 640 F. Supp. 2d at 1018; *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901-02 (7th Cir. 2006); *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 971-72 (N.D. Ill. 2008).

Plaintiffs' consumer fraud claim simply restates the breach of contract claim—i.e., Defendants did not pay Plaintiffs under Plaintiffs' reading of the parties' agreements. *Compare Am. Compl.*, ¶¶ 163-174 *with Am. Compl.*, ¶¶ 137-148. These allegations are "nothing more than the failure to fulfill [an alleged] promise." *Shaw*, 461 F.3d at 902. The Court should dismiss Plaintiffs' Consumer Fraud Act claim. *See Song*, 640 F. Supp. 2d at 1018.

2. **Defendants' alleged wrongful conduct does not implicate consumer protection concerns.**

Plaintiffs are not consumers who bought products from Defendants. A consumer is defined under the Act as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Plaintiffs are not consumers under the plain language of the statute. As a result, the statute applies only if they show that the conduct on which they base their claim is a trade practice addressed to the market generally or that implicates consumer protection concerns. *Lefebvre Intergraphics*, 946 F. Supp. at 1368. Thus, Plaintiffs must allege "sharp business practices designed to mislead consumers about a competitor, or an implication of health, safety or welfare issues." *Credit Ins. Consultants, Inc. v. Gerling Glob. Reinsurance Corp. of Am.*, 210 F. Supp. 2d 980, 986 (N.D. Ill. 2002).

Plaintiffs allege nothing of the sort here. Rather, Plaintiffs allege fraudulent statements about individual contracts for payment. That cannot sustain a claim under the Consumer Fraud Act. The parties' contracts do not address the market generally, and Plaintiffs alleged Defendants made the fraudulent statements to Plaintiffs, not to the general public. *See Harris*, 2009 WL 2222740, at *9. Because Plaintiffs do not allege how Defendants' alleged fraudulent actions implicate consumer protection concerns or address the market generally, this claim must be dismissed.

D. **Plaintiffs fail to plausibly allege Aleksandar Mimic was an employer under the FLSA or IWPCA**

Plaintiffs seek to hold Aleksandar Mimic liable for violations of the FLSA and IWPCA based on his role as president or manager of *some* of the Defendants. *Am. Compl.*, ¶ 30. To assert a claim against an individual under the FLSA or IWPCA, the plaintiff must plausibly allege facts— not legal conclusions—that demonstrate the individual could be held liable as an employer.

Because Plaintiffs failed to do so here, the Court should dismiss their FLSA and IWPCA claims against Mimic.[5]

### 1.     Aleksandar Mimic is not an employer under the FLSA.

The FLSA provides employees a cause of action against employers that fail to pay the federal minimum wage. 29 U.S.C. § 206. An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Individuals "with supervisory authority over employees may be held individually liable as employers under the FLSA if they were either responsible in whole or in part for the alleged violation." *Cardenas v. Grozdic*, No. 12 C 292, 2012 WL 2359399, at * 4 (N.D. Ill. June 20, 2012). Courts also consider "'the economic reality' of the working relationship to determine whether an individual is an employer under the FLSA," including whether the individual "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1075 (N.D. Ill. 2014) (quoting *Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F. Supp. 2d 787, 795 (N.D. Ill. 2011)). Moreover, neither supervision nor the four economic realities factors are dispositive; rather the individual "defendant's conduct must have caused, in whole or in part, the alleged violation." *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 698 (N.D. Ill. 2015), *supplemented*, No. 13 CV 4887, 2016 WL 278813 (N.D. Ill. Jan. 15, 2016) (observing that although causation "is a necessary condition to liability, it alone is not sufficient"). Additionally, "the defendant must have actually exercised his authority, at least enough to have caused the violation in whole or in part." *Id.*

---

[5] Defendants dispute Plaintiffs' allegations that they were misclassified as employees; rather, Defendants contend Plaintiffs were properly classified as independent contractors. For purposes of this motion, Defendants only argue that Mimic cannot be held individually liable as an employer, regardless of Plaintiffs' independent contractor status.

Under any metric, Plaintiffs failed to allege facts which, if accepted as true, would plausibly state a claim against Mimic as an employer under the FLSA. Plaintiffs allege no facts that demonstrate Mimic supervised them, hired or fired them, controlled their work schedules or conditions of their alleged employment, determined the rate and method of payment, or maintained their employment records. Nor are there any factual allegations that anything Mimic did caused the alleged FLSA violations of which Plaintiffs complain. *See, e.g., Am. Comp.*, ¶¶ 103-108 (identifying certain weeks in which Plaintiffs allege they were not paid). Indeed, despite detailing their alleged interactions with various dispatchers, brokers, and others, *id.*, ¶¶ 42, 54-64, 80, 114, 165, Plaintiffs *never* allege they met Mimic, spoke with him, or interacted with him in any way.

To make up for the absence of any factual allegations, Plaintiffs instead allege "[o]n information and belief" that "Mimic had the authority to hire and fire Plaintiffs and members of the FLSA Class, supervised and controlled work schedules and conditions of Plaintiffs' and class members' employment, and determined the rate and method of Plaintiffs' compensation." *Am. Compl.*, ¶ 196. For starters, "pleading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge, unless he rebuts that presumption." *Perkins v. Wexford Health Sources, Inc.*, No. 15 C 6188, 2019 WL 918501, at *2 (N.D. Ill. Feb. 25, 2019) (citation omitted).

Regardless, courts routinely reject these kinds of threadbare, "conclusory allegations" because they "merely recite the elements of FLSA employer status, and thus fail to support Plaintiffs' claim." *Pfefferkorn v. Primesource Health Grp., LLC*, No. 17-CV-1223, 2018 WL 828001, at *11 (N.D. Ill. Feb. 12, 2018); *see also Taha v. International Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[W]hen considering the viability of a claim in the face of a Rule 12(b)(6) challenge, we may reject sheer speculation, bald assertions,

12

and unsupported conclusory statements."). In *Pfefferkorn*, the plaintiffs sought to hold four individuals liable under the FLSA. *Id.* The court concluded the plaintiffs adequately stated a claim against two individuals because the plaintiffs alleged specific facts demonstrating those two individuals "played a significant role in determining Plaintiffs' pay and overseeing their working conditions." *Id.* at *10. But the court reached the opposite result for the other two individual defendants, because the plaintiffs alleged no facts to support their conclusory allegations that those individuals "'directed the day to day operations of the [corporate] defendants,' 'controlled the operations and labor and compensation policies of [the corporate defendants],' 'supervised and/or controlled Plaintiffs' employment' and 'acted directly or indirectly in the interest of the [corporate] Defendants in relation to their employees." *Id.* at *10 (quoting the plaintiffs' complaint). Absent any "factual detail" underlying these bare conclusions, the court held the plaintiffs failed to state a claim. *Id.* at *10; *see also Brunner v. Liautaud*, No. 14-C-5509, 2015 WL 1598106, at *3-4 (N.D. Ill. Apr. 8, 2015) (granting CEO's motion to dismiss because plaintiffs failed to plead facts demonstrating CEO was employer under FLSA); *E.E.O.C. v. Home by Hemphill*, No. 95 C 1138, 1995 WL 683502 (N.D. Ill. Nov. 16, 1995) (rejecting allegations that "merely conclude[d] that [the individual defendant] violated the statutory provisions of the FLSA").

Here, like in *Pfefferkorn*, Plaintiffs merely recite the elements of the economic reality assessment used to determine employer status under the FLSA. This single conclusory allegation—supported by no underlying factual detail—is not enough to raise Plaintiffs' claims against Mimic from the possible to the plausible. Accordingly, Plaintiffs' FLSA claim against Aleksandar Mimic must be dismissed.

2. **Aleksandar Mimic is not an employer under the IWPCA.**

To state a claim under the IWPCA, Plaintiffs "must plead that (1) [they] had an employment agreement with the employer that required the payment of wages or final

compensation and (2) that the defendants were employers under the IWPCA." *Aprill v. Aquila*, No. 20 C 04657, 2022 WL 614984, at *12 (N.D. Ill. Mar. 1, 2022) (internal quotation and citation omitted). An employer under the IWPCA includes "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of [the IWPCA]." 820 Ill. Comp. Stat. 115/13. Indeed, section 13 of the IWPCA does not impose strict liability on supervisory employees, rather, IWPCA liability is reserved "for those individual decision makers who *knowingly permitted* the [IWPCA] violation." *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 899, 900 (Ill. 2005) (emphasis added). Courts have "interpreted 'knowingly permit' to mean advise, consent, affect, or consult." *Cullotta v. United Surgical Partners Int'l, Inc.*, No. 19-cv-06490, 2021 WL 3367193, at *9 (N.D. Ill. Aug. 3, 2021) (cleaned up) (collecting cases). In other words, to "knowingly permit" under the IWPCA requires personal involvement in the decisions at issue; "[b]eing a 'decision maker,' without knowing permission of the alleged IWPCA violation, is not sufficient to state an IWPCA claim." *Id.*, at *4.

Plaintiffs' IWPCA is being brought against all Defendants, including Aleksandar Mimic, whom Plaintiffs state is the "registered agent for multiple Defendants and operates multiple of the Defendants as president or manager." *Am. Compl.*, ¶ 30. Plaintiffs' IWPCA claim against Mimic is premised on a sole allegation that "Mimic was aware of an approved the illegal deductions and withholdings." *Am. Compl.*, ¶ 205. This is insufficient to state a claim against an individual under the IWPCA. In *Gibbs v. ABT Elecs., Inc.*, the court dismissed an IWPCA claim brought against an individual based on the conclusory nature of the allegations of the individual's knowledge of the conduct prompting the IWPCA claim. No. 21 CV 6277, 2022 WL 16540182, at * 4 (N.D. Ill. Oct. 28, 2022). Plaintiff in *Gibbs* alleged that the corporate defendant subjected him to unauthorized deductions for breaks that were never taken. *Gibbs v. ABT Elecs., Inc.*, No. 21 CV 6277, 2022

WL 16540182, Dkt. No. 19, ¶¶ 161-62. (N.D. Ill. Oct. 28, 2022) (hereinafter referred to as *Gibbs Am. Compl.*). The plaintiff also alleged that the individual defendant "knowingly caused or permitted these violations to occur", *Gibbs Am. Compl.*, ¶ 163, and "possessed day-to-day authority over Plaintiff's and other employees' terms and conditions of employment, including without limitation the authority to hire and fire, make pay decisions, and otherwise control [plaintiff's] work conditions." *Gibbs Am. Compl.,* ¶ 164. The court ultimately dismissed the IWPCA claim against the individual defendant, finding that "[c]onclusory allegations of [the individual defendants'] knowledge cannot suffice" to state a claim under the IWPCA. *Gibbs*, 2022 WL 16540182, at * 4.

Like in *Gibbs*, Plaintiffs only provide conclusory allegations pertaining to Mimic's knowledge of the alleged unlawful deductions—that he "was aware of and approved the illegal deductions and withholdings." *Am. Compl.*, ¶ 205. But this assertion, which merely restates the "knowingly permitted" standard under the IWPCA, cannot suffice to state a claim for individual liability under the IWPCA. *Gibbs*, 2022 WL 16540182, at * 4; *see also Ashcroft*, 556 U.S. at 680-81 (finding that bare assertions that defendant "knew of, condoned, and willfully and maliciously agreed to subject" petitioner to harsh conditions were conclusory and could not be assumed to be true). Therefore, the Court should dismiss Plaintiffs' IWPCA claim against Mimic.

## IV.    CONCLUSION

The Court should grant Defendants' motion and dismiss Counts I-III of the Amended Complaint in whole and Counts VI and VII of the Amended Complaint in part.

Dated: November 30, 2022                Respectfully submitted,

*/s/ Charles Andrewscavage*
Charles Andrewscavage
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603
Phone: 312-255-7200
Fax: 312-422-1224
candrewscavage@scopelitis.com

*Attorney for Defendants,*
*Super Ego Holdings, LLC, Floyd, Inc., Kordun*
*Express, Inc., Rocket Expediting, LLC, Jordan*
*Holdings, Inc., Rex Trucking, Inc., Haidar Dawood*
*LLC and Aleksandar Mimic*

4890-4016-8511, v. 12

16