**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LARRY ATKINSON, EUGENE WALKER, JASON GREENE, GIOVANNI WILLIAMS, CHARLES CROSS, and TERRILL CLAY, on behalf of themselves and others similarly situated,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>SUPER EGO HOLDINGS, LLC, FLOYD, INC., KORDUN EXPRESS, INC., ROCKET EXPEDITING, LLC, JORDAN HOLDINGS, INC. d/b/a JHI TRANSPORT, REX TRUCKING, INC., HAIDAR DAWOOD LLC, and ALEKSANDAR MIMIC,<br><br>　　　Defendants. | Case No. 1:22-cv-04127<br><br>Honorable Martha M. Pacold |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

**I.　　INTRODUCTION**

　　Plaintiffs' Opposition (ECF No. 26) (Pls.' Br.) to Defendants' Motion to Dismiss (ECF Nos. 23, 24) (Defs.' Br.) confirms that the Court should grant Defendants' Motion to Dismiss. The plain and unambiguous language of the parties' agreements controls, and that language demonstrates Defendants agreed to pay Plaintiffs 88% of the load pay offered. Plaintiffs admit this is exactly what Defendants paid. Nothing in the agreements supports Plaintiffs' atextual reading. In fact, in order to adopt Plaintiffs' reading, the Court would need to rewrite the agreement to insert language it does not contain and interpret the term "offer" in a way that contradicts its plain, ordinary, and commonly understood meaning. To do so would contradict well-established Illinois doctrine on contract interpretation. And Plaintiffs' position, which would essentially shackle motor carriers and prohibit any compensation arrangement except those based on gross revenue, finds no

...

...

home in Illinois law or the Truth-in-Leasing Act (TILA) regulations. Illinois protects contracting parties' freedom to contract. *Hussein v. L.A. Fitness Int'l, L.L.C.*, 2013 IL App (1st) 121426, ¶ 13, 987 N.E.2d 460, 465. And TILA likewise provides that compensation agreements "may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or *by any other method of compensation mutually agreed upon by the parties to the lease*." 49 C.F.R. § 376.12(d). Here, Defendants agreed to pay Plaintiffs 88% of the load pay offered. The Court should enforce the contract as written and dismiss Plaintiffs' breach of contract and TILA claims premised on Plaintiffs' errant reading.

The Court should also dismiss Plaintiffs' claims that Defendants took deductions and retained escrow in breach of the parties' agreements, as well as Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Businesses Practices Act (Consumer Fraud Act). Plaintiffs inappropriately attempt to resuscitate these claims by using their Opposition to amend their (already) Amended Complaint. But "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). Even so, where, as here, the old and new allegations "do not permit the court to infer more than the mere possibility of misconduct," the Court should dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. ARGUMENT

### A. The Court Should Dismiss Plaintiffs' Breach of Contract Claim Because the Written Agreements Unambiguously State Defendants Had to Pay Plaintiffs 88% of the Load Pay Defendant Offered to Them.

#### 1. The written agreements entitle Plaintiffs to 88% of load pay offered and nothing more.

The written agreements unambiguously set forth the parties' agreement—Defendants would pay Plaintiffs 88% of the load pay offered by Defendants. The Independent Contractor Agreement states that Defendants agree to pay "88% of load pay offered":

2

> CARRIER agrees to pay 88% of load pay offered, minus applicable escrow deductions, cargo & liability insurance, cash advances, fines, violations, damage payments, deductibles, fuel card payments and any/all agreed upon damage/payments.

Independent Contractor Agreement, ECF No. 21-3 at 3.

Likewise, the Equipment Lease Agreement states that Plaintiffs "shall pay to [Defendants], 12% commission on all loads as offered to [Plaintiffs] under this agreement":

> Lessee shall pay to Lessor, **12%** commission on all loads as offered to Lessee under this agreement, and as a working contractor at Lessor's Motor Carrier. Should Lessor have to make any repairs to the

Equipment Lease Agreement, ECF No. 21-4 at 5. Taken together, the only way to read the plain language of the agreements is that they provide Defendants agreed to pay Plaintiffs 88% of the load pay offered by Defendants. Under the "four corners rule," no other allegations or evidence is relevant to resolving this motion. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (citation omitted).[1] Plaintiffs admit that Defendants paid them 88% of the load pay Defendants offered to Plaintiffs for each load. And nothing in either agreement even suggests Defendants offered to pay Plaintiffs 88% of the gross revenue Defendants received from its customers. *See Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) ("In Illinois . . . if a contract is unambiguous, the court will enforce it as written, without resorting to extrinsic evidence.")

Recognizing that the contracts' plain language does not support their position, Plaintiffs ask the Court to alter it. First, they argue that the Court should insert the word "broker" into the contractual language to reach the most "straightforward" reading of the contract. *Pls.' Br.* at 4 (emphasis added). Plaintiffs acknowledge this insertion by italicizing the added language in their Opposition—"Defendant ('Carrier') agreed to pay Plaintiffs 88% of the load pay that the *broker*

---

[1] For the same reason, the Court should reject Plaintiffs' reliance on advertising materials that predated the parties' agreement as extrinsic evidence for interpreting the agreements. Under Illinois law, pre-contractual documents are irrelevant when interpreting the unambiguous language of a contract. *See Greggs USA, Inc. v. 400 E. Professional Assoc., LP*, 2021 IL App (1st) 200959, 198 N.E.3d 1062, 1073. Regardless, the advertising materials Plaintiffs reference do not support their argument. ECF No. 17 at 8-9.

3

offered to pay Defendants for each load that Plaintiffs hauled." *Id.* The Court should reject Plaintiffs proffered reading because it requires the Court to rewrite the language the parties agreed to. "'A court will neither add language or matters to a contract about which the instrument itself is silent, nor add words or terms to an agreement to change the plain meaning of the parties as expressed in the agreement." *Kasongo v. American Gen. Life Ins. Co.*, 479 F. Supp. 3d 754, 759 (N.D. Ill. 2020) (quoting *Sheehy v. Sheehy*, 702 N.E.2d 200, 204 (Ill. App. Ct. 1998)). The Independent Contractor Agreement does not tie Plaintiffs compensation to the revenue Defendants received from brokers for loads. Indeed, if the parties had intended to pay based on a percentage of the amounts paid by Defendants' customers, the compensation would be tied to percentage of gross revenue.[2] It is not. It would also have used the term revenue. It does not. Instead, the agreements make clear that Defendants would pay Plaintiffs 88% of the load pay offered. And Plaintiffs concede that Defendants did in fact pay 88% of the load pay Defendants offered, which was communicated to Plaintiffs before they accepted a load. *See, e.g.*, Am. Compl. ¶¶ 54, 60, 61.

Plaintiffs' interpretation is also incorrect because it requires the Court to alter the "plain, ordinary, and generally accepted meaning" of the word offer in the context of an agreement between Defendant and the contractor. *Continental Cas. Co. v. Donald T. Bertucci, Ltd.*, 926 N.E.2d 833, 839 (Ill. App. Ct. 2010) ("Terms used are given their plain, ordinary, and generally accepted meaning, unless the contract indicates in some way that particular definitions are used to replace that meaning."). Merriam-Webster defines offer as "to present for acceptance or rejection." *Offer,* Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/offer (last visited January 12, 2023); *see also Offer*, Black's Law Dictionary (11th ed., 2019) ("The act

---

[2] Plaintiffs misread the Equipment Lease in arguing the word "commission" necessarily means the percentage should be applied to the amount Defendants received from a third-party broker. To the contrary, the full provision read in context underscores that Defendants agreed to pay Plaintiffs 88% "on all loads *as offered to [Plaintiffs]* under this agreement." ECF No. 21-4 at 5. (emphasis added).

4

or an instance of presenting something for acceptance. . ."). Even under Plaintiffs' view, a broker never "presented" anything to Plaintiffs for acceptance or rejection; only Defendants did. And Plaintiffs concede that dispatchers presented the rate from which Plaintiffs' compensation would be calculated before they hauled each load and Defendants paid that amount. *Pls.' Br.* at 2-3.

Finally, Plaintiffs argument that the parties' agreement on compensation is ambiguous is meritless. Plaintiffs essentially argue that the parties' agreement could have been clearer. *Pls.' Br.* at 6. But the fact that a contract could have been drafted differently does not mean the contract, as drafted, is ambiguous. *See Abena v. Metropolitan Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008) ("[a] poorly drafted contract term is still a contract term."); *Kasongo*, 479 F. Supp. at 758 ("[a]lthough the Annuity does not elaborate on what 'pay income payments' means, this not does necessarily imply the existence of ambiguity that must be presented to a jury as a question of fact."). Nor does the fact that other carriers enter into different compensation arrangements with contractors—such as paying by a percentage of gross revenue—render the agreements between Defendants and Plaintiffs ambiguous. *Page v. Alliant Credit Union*, 52 F.4th 340, 347 (7th Cir. 2022) ("The fact that some institutions disclosed that they used the available-balance method differently or more clearly does not prove that the Agreement promised to use the ledger-balance method or that the Agreement is ambiguous.").[3] The Court should reject Plaintiffs' invitation to "search for ambiguity where there is none." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation and citation omitted).

    **2.**    **Defendants did not breach Plaintiffs' contracts by making deductions.**

Plaintiffs' Amended Complaint does not identify any deductions Defendants made in violation of the parties' written agreements. Instead, the Amended Complaint only identifies

---

[3] The fact the parties here expressly departed from a compensation agreement based on a percentage of gross revenue also shows that Plaintiffs' reliance on industry and custom is misplaced. *Id.*

5

deductions that Plaintiffs allege were "illegal" or "unlawful" because they weren't properly authorized or disclosed under the IWPCA and the TILA regulations. *See, e.g., Am. Compl.* ¶¶ 155, 202. But throughout their Opposition, Plaintiffs now seek to rewrite their Amended Complaint to add allegations to support a breach of contract claim. Plaintiffs say they meant to allege Defendants made deductions related to fuel, occupational accident insurance, ELD enrollment fees, and trailer rentals in breach of the parties' agreements. *Pls.' Br.* at 8-9.[4] The Court should reject this effort. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989).

Even so, Plaintiffs' breach of contract claim for deductions has no merit. The parties broadly agreed that Plaintiffs would be responsible "to pay the *entire costs* of operating and maintaining the leased equipment," including but limited to "Occ/Acc Insurance" and "[a]ll expenses of fuel." ECF No. 21-3 at 5 (emphasis added).[5] Additionally,

> In any case where the INDEPENDENT CONTRACTOR has secured an advance of any kind from CARRIER including, but not limited to, fuel, lubricants, pallets, safety equipment, tires, tractor or trailer parts, fines and penalties by operating authorities, licenses, permits, transfer charges, tolls or any insurance deductions authorized by INDEPENDENT CONTRACTOR, CARRIER shall be authorized to deduct the amount of such advance(s) from any trip settlement or other monies due.

---

[4] The Amended Complaint never even mentions "ELD enrollment fees." The other deductions are only referenced as to Plaintiffs' claims for unlawful or illegal deductions under the IWPCA and TILA.

[5] This provision also encompasses the ELD enrollment fees because the federal government mandates that truck operators use electronic logging devices to track their hours of service. *See Karling v. Samsara Inc.*, 2022 WL 2663513, at *3 (N.D. Ill. 2022). As to trailer rentals, Section I(a)(3) identifies "equipment rental costs" as Plaintiffs' "obligation[]." ECF No. 21-3 at 3. In any event, Plaintiffs do not claim that Defendants agreed to bear responsibility for ELD enrollment fees or trailer rentals; nor do they identify any provision in any of the parties' agreements to support that position. On the other hand, the contracts repeatedly emphasize Plaintiffs' agreement to bear all operating costs. *See, e.g.,* ECF No. 21-3 at 5.

ECF No. 21-3 at 4. Plaintiffs make no effort to explain how—assuming their allegations to be true—Defendant breached these provisions by making deductions for fuel, occupational accident insurance, ELD enrollment fees, and trailer rentals.[6] The Court should dismiss this claim.

### 3. Plaintiffs' contract claim based on escrow should be dismissed.

The parties agree that, under the Independent Contractor Agreement, "ALL escrow funds may be held for a minimum of 45 days after termination of the Agreement (by either party and for any reason) to insure payment of INDEPENDENT CONTRACTOR'S obligations" ECF No. 21-3 at 3-4; *Pls.' Br.* at 9 (acknowledging "the contracts allowed Defendants to retain portions of Plaintiffs' escrow under certain circumstances"). Plaintiffs have failed to allege any facts showing Defendants breached the parties' agreement regarding the return of escrow. Instead, Plaintiffs merely offer legal conclusions—that they "substantially performed all their obligations under their contracts" and that "there was no contractual basis for Defendants to retain their escrow payments." *Pls.' Br.* at 9. These kinds of "bald . . . conclusory statements" cannot defeat a motion to dismiss. *Taha v. International Brotherhood of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020); *Rsrv. Hotels PTY Ltd. v. Mavrakis*, 790 F.3d 738, 740–41 (7th Cir. 2015) (affirming because plaintiff failed to plead facts showing substantial performance); *Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*, No. 17 CV 4723, 2019 WL 4189480, at *7 (N.D. Ill. Sept. 4, 2019).

---

[6] For example, Plaintiffs allege that it was improper for Defendants to deduct the amount that Plaintiffs actually charged to their fuel card, and instead, Defendants should have deducted an amount based on fuel rate discounts that had been negotiated with Pilot and Loves. *Am. Compl*. ¶¶ 97-99. But Defendants deducted exactly what the contracts permitted them to deduct—"all expenses of fuel." Plaintiffs charged an amount of money to their fuel cards each time they refueled their trucks. According to the contracts, Defendants could recover the amount that Plaintiffs charged. *See* ECF No. 21-3 at 4. And that is exactly what Defendants did. Even accepting Plaintiffs' unsubstantiated allegation that Defendants' "profited" from a "discount," there is nothing improper about a motor carrier including administrative costs in deductions or even turning a profit. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1319 (11th Cir. 2010) ( affirming finding that motor carrier can profit from charge-back items)

Plaintiffs assertion that "it will be [Defendants'] burden to establish why Plaintiffs were not entitled to receive the entire escrow balance," *Pls.' Br.* at 10, does not change this conclusion. Plaintiffs cite no authority to support this position.[7] They bear the burden to establish breach, *see Spitz v. Proven Winners N. Am., LLC*, 969 F. Supp. 2d 994, 1005 (N.D. Ill.), and must allege facts showing they are entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Because Plaintiffs failed to allege facts showing Defendants breached the parties' agreement concerning escrow, the Court should dismiss this claim.

### 4. Plaintiffs have failed to plead a violation of the duty of good faith and fair dealing.

The duty of good faith and fair dealing is relevant only when the contract vested the defendant with discretion in performing an obligation under the contract and the defendant exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the parties' reasonable expectations. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-45 (7th Cir. 1992). In their opening brief, Defendants explained that Defendants did not have broad discretion and, as a result, could not act unreasonably or arbitrarily in exercising discretion. Plaintiffs failed to respond to this argument in their opposition. For that failure alone, the Court can, and should, dismiss Plaintiffs' contract claim premised duty of good faith and fair dealing. *See Bonte v. U.S.*

---

[7] Commingling their breach of contract claims with their TILA claims, Plaintiffs point to a TILA regulation, 49 C.F.R. § 376.12(k)(6). But that regulation affirmatively states, "the authorized carrier may deduct monies for those obligations incurred by the lessor which have been previously specified in the lease." *Id.* In any event, like with a breach of contract claim, Plaintiffs bear the burden under TILA to show both (1) a violation of the regulation, and (2) that Plaintiffs sustained damages as a result of that violation. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, No. CV-02-1059-PHX-PGR, 2007 WL 2808997, at *7 (D. Ariz. Sept. 27, 2007), *aff'd*, 632 F.3d 1111 (9th Cir. 2011) (granting summary judgment on escrow claim where plaintiff failed to identify any deductions from escrow that were not authorized or otherwise explain why carrier was not entitled to retain escrow); *Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 339 F.3d 1001, 1011 (8th Cir. 2003) ("The fact that certain specially enumerated items may offset the [escrow] funds returned in no way violates [49 CFR § 376.12(k)(6)"].

*Bank., N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (affirming district court's dismissal where plaintiff failed to respond to argument in motion to dismiss).[8]

> **B. The Court Should Dismiss Plaintiffs' TILA Claims under 49 C.F.R. § 376.12(d) and 376.12(g).**

49 C.F.R. § 376.12(d) does not mandate or prohibit any specific compensation arrangement. It only requires that "[t]he amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease." 49 C.F.R. § 376.12(d). It also explains that "the amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, *or by any other method of compensation mutually agreed upon by the parties to the lease*." *Id.* (emphasis added). Plaintiffs tellingly ignore this sentence. The Independent Contractor Agreement here unambiguously states that Defendants agreed to pay "88% of load pay offered." ECF No. 21-3 at 3. Similarly, the Equipment Lease Agreements state that Plaintiffs "shall pay to [Defendants], 12% commission on all loads as offered to [Plaintiffs] under this agreement." ECF No. 21-4 at 5. By Plaintiffs' own admission, Defendants always provided the load amount before Plaintiffs hauled a load, *Pls' Br.* at 2-3, and Plaintiffs' own allegations show that Defendants consistently paid Plaintiffs' 88% of the load pay amount they offered to Plaintiffs. *See, e.g.*, *Am. Compl.* ¶¶ 54, 60, 61. Nothing more was needed; Defendants complied with 49 C.F.R. § 376.12(d).

---

[8] Plaintiffs' argument that a court should not dismiss parts of claim is irrelevant for two reasons. First, a single count can include multiple claims. *Doe by & through Doe v. Apple Inc.*, No. 3:20-CV-421-NJR, 2022 WL 17538446, at *3 (S.D. Ill. Aug. 1, 2022); *W.P. v. Anthem Ins. Companies Inc.*, No. 115CV00562TWPTAB, 2017 WL 605079, at *4 (S.D. Ind. Feb. 15, 2017). Second, Defendants have moved to dismiss all claims underlying Plaintiffs' breach of contract allegations because Plaintiffs failed to allege sufficient facts to show a breach under any of their theories. Accordingly, Plaintiffs are correct that their breach of good faith and fair dealing claim cannot survive independently.

Plaintiffs' reliance on *Owner-Operator Indep. Drivers Ass'n, Inc. v. Bulkmatic Transp. Co.*, 503 F. Supp. 2d 961 (N.D. Ill. 2007) is misplaced. In *Bulkmatic*, the lease specifically provided that the motor carrier would pay based on a percentage of *gross revenue*. The parties disputed whether certain items should be included or excluded from the calculation of gross revenue. Because "the amount to be paid by Bulkmatic for the owner-operators' equipment and driver services [was] not clearly stated on the face of the Lease," the court concluded the lease violated 49 C.F.R. § 376.12(d). *Bulkmatic*, 503 F. Supp. 2d at 970.

Here, the parties never agreed that Defendants would pay Plaintiffs on a percentage of gross revenue. Rather, the agreements unambiguously stated Defendants would pay Plaintiffs 88% of the load pay offered, and Plaintiffs own allegations show Defendants did exactly that. Plaintiffs' argument presumes that 49 C.F.R. § 376.12(d) categorically prohibits the kinds of compensation arrangements here. But Plaintiffs cite no authority for that proposition, and accepting their position would eliminate § 376.12(d)'s express flexibility, which allows motor carriers and owner-operators to agree to "*any other method of compensation*." 49 C.F.R. 376.12(d) (emphasis added).

Courts have also rejected similar attempts to narrow § 376.12(d)'s text. For example, in *Port Drivers Federation 18, Inc. v. All Saints*, the lease contained a compensation schedule that listed fixed fees for pick-up and delivery at various locations. 757 F. Supp. 2d 463, 469 (D. N.J. 2011). The lease also contemplated pick-ups and deliveries that would take place outside the locations specifically stated in the compensation schedule, providing that in such a case, compensation would be communicated to the contractor at the time the job was offered and could be accepted orally, electronically, or in hard copy. *Id.* The contractor could accept the job either by performance, signing a delivery receipt, or communicating via an electronic device. *Id.* The court found that this arrangement satisfied 49 C.F.R. 376.12(d) because it provided the contractor

with all the information that was required. *Id.; see also Luxamon v. Ironbound Express, Inc.*, No. 11-2224, 2021 WL 1153145, at *15 (D. N.J. Mar. 26, 2021) (stating that a lease containing a fixed fee rather than percentage of gross revenue "clearly complies with 49 C.F.R. § 376.12(d)). The Court should reject Plaintiffs' novel interpretation and dismiss their claim under § 376.12(d).

Finally, Plaintiffs' opposition does not address Defendants' argument that 49 C.F.R. § 376.12(g) does not apply, *Defs.' Br.* at 8-9, and the Court should similarly dismiss that claim.

### C. The Court Should Dismiss Plaintiffs' Consumer Fraud Claim.[9]

The Court should dismiss Plaintiffs' Consumer Fraud Act claim for two reasons. First, Plaintiffs' do not plausibly allege they were consumers entitled to relief under the Consumer Fraud Act. In fact, Plaintiffs' Amended Complaint never alleges that they were consumers of any service offered by Defendants; they cannot correct that in their Opposition. *Thomason*, 888 F.2d at 1205 ("the complaint may not be amended by the briefs in opposition to a motion to dismiss")

Second, even if the Court considers Plaintiffs' new allegations, under the parties' agreements, Plaintiffs were the ones who offered services to Defendants, not the other way around. *Am. Compl.* ¶ 141. Plaintiffs acknowledge this in their Amended Complaint, alleging that they incurred damages in the form of underpayments *for the services they offered. Am. Compl.* ¶ 189. A plaintiff does not have a Consumer Fraud Act claim when the "[p]laintiff [alleges they were] harmed in [the] capacity . . . as a supplier of services." *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2018 WL 3105955, at *9 (N.D. Ill. June 25, 2018) ("Plaintiff was harmed in her capacity as an employee, which is to say in her capacity as a supplier of services. She was not defrauded as a consumer of hamburgers, and she cannot state a claim under the ICFA."); *Butler v.*

---

[9] Without explanation, Plaintiffs claim Defendants' motion to dismiss only implicates their Consumer Fraud Claim to the extent Plaintiffs allege Defendants' acted deceptively, but not unfairly. *Pls.' Br.* at 10 n.3. Defendants moved to dismiss the entirety of Plaintiffs' Consumer Fraud Claim. *Defs.' Br.* at 9-10.

11

*Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 786, 797 (S.D. Ill. 2018) ("Butler and his proposed class are suppliers of labor—not consumers."); *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012) ("Hess has no claim . . . because Hess was an employee, not a 'consumer.'").[10] Plaintiffs are not consumers under the Consumer Fraud Act.

Nor have Plaintiffs stated a Consumer Fraud Act claim by alleging that "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1368 (N.D. Ill. 1996) (internal quotation and citation omitted). The fact Plaintiffs allege Defendants made false advertisements online and through social media is insufficient so support a claim. *Biggers Holdings LLC v. Garcia*, No. 21-CV-4680, 2022 WL 3107617, at *6 (N.D. Ill. Aug. 4, 2022) ("But the mere fact that an allegedly deceptive or misleading advertisement appears on the Internet is not sufficient to show a consumer nexus."). In order to implicate consumer protection concerns, "courts have generally required some allegations of sharp practices designed to mislead consumers about a competitor, or an implication of public health, safety or welfare issues." *Credit Ins. Consultants, Inc. v. Gerling Glob. Reinsurance Corp. of Am.*, 210 F. Supp. 2d 980, 985 (N.D. Ill. 2002). No such allegations are present here.

---

[10] In their opposition, Plaintiffs say they "contracted with Defendants for the provision of a service—namely, the finding and negotiating of loads with freight brokers and shipper." *Pls.' Br.* at 11. Nothing in the Amended Complaint supports this statement and it is contradicted by the parties' written agreements, under which the parties plainly contracted for Plaintiffs to provide transportation services. Even more, the Independent Contractor Agreement expressly disclaims that Defendant guaranteed any minimum number of trips. ECF No. 21-3 at 6, § V. In a footnote, Plaintiffs also say they leased trucks from one of Defendants' leasing companies, which "is a classic consumer transaction." *Id.* at 11 n.4. But again, Plaintiffs' Amended Complaint does not allege this as the basis for Plaintiffs' Consumer Fraud claim. Even more, Plaintiffs' new allegation confirms that the basis of the Consumer Fraud claim is that Defendants did not properly pay them for the services they provided. *Id.* (alleging Plaintiffs "leased their trucks . . . in exchange for the promise that Defendants would pay Plaintiffs 88% of the loads they hauled").

Further, the nature of those alleged advertisements—that Defendants allegedly misrepresented how it would pay owner-operators and then used rate confirmation sheets to further the deception—confirms Defendants actions were not made to the market generally. *Beatty v. Accident Fund Gen. Ins. Co.*, No. 317CV01001NJRDGW, 2018 WL 3219936, at *10 (S.D. Ill. July 2, 2018) ("While the conduct may have repercussions for Illinois consumers, Defendants are not targeting the market generally. Rather, they are allegedly failing to pay medical providers and concealing their failure to do so by various means."); *Harris v. JAT Trucking of Ill., Inc.*, No. 07-CV-2210, 2009 WL 2222740, at *9 (C.D. Ill. July 24, 2009) (finding that false statements made to the plaintiff and other employees, and not to the general public, were not directed to the market generally.); *Onvi, Inc. v. Radius Project Dev., Inc.*, No. 19 C 3201, 2020 WL 4607242, at *5 (N.D. Ill. Aug. 11, 2020) (finding that conduct directed towards the plaintiff, not towards consumers generally, would not qualify as conduct directed towards the market.)[11]

### D. Plaintiffs Fail to Allege Mimic is an Employer Under the FLSA or IWPCA

#### 1. Mimic is not an employer under the FLSA

Plaintiffs do not dispute that they made their only allegations against Mimic— that he "had the authority to hire and fire Plaintiffs and members of the FLSA class, supervised and controlled work schedules and conditions of Plaintiffs' and class members' employment, and determined the rate and method of Plaintiffs' compensation," *Am. Compl.* ¶ 196— "[o]n information and belief." This is insufficient. "A complaint must include facts showing a plausible—not merely

---

[11] The cases Plaintiffs cite are inapposite. *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217 (Ill. App. Ct. 2003), involved a merchant binding individuals to the purchase of an automobile. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.* 546 N.E.2d 33 (Ill. App. Ct. 1989), involved allegations that defendant published false information about its competitor's prices for services. In *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628 (7th Cir. 1992), an appeal from a jury trial, there was no dispute that plaintiff was a consumer. And *Stephens v. C&K Trucking, LLC*, No. 20 C 4305, 2021 WL 4978451, at *2 (N.D. Ill. May 17, 2021), did not even involve a claim under the Consumer Fraud Act.

13

conceivable—entitlement to relief" and will not "suffice if it tenders naked assertions devoid of further factual enhancement." *Taha*, 947 F.3d at 469 (cleaned up). And courts "reject sheer speculation, bald assertions, and unsupported conclusory statements" when considering the viability of a claim after a Rule 12(b)(6) challenge. *Id.* That is what Plaintiffs have done here, alleging *no* facts that establish Mimic supervised them, hired or fired them, controlled their work schedules or conditions of their alleged employment, determined the rate and method of payment, or maintained their employment records. The Court should follow suit and dismiss Plaintiffs' FLSA claim against Mimic. *See Pfefferkorn v. Primsource Health Grp., LLC*, No. 17-CV-1223, 2018 WL 828001, at *11 (N.D. Ill. Feb. 12, 2018). [12]

Plaintiffs argument that FLSA claims against CEOs and company presidents routinely proceed past the motion-to-dismiss stage does not change that conclusion. In each case Plaintiffs rely on, plaintiffs alleged specific and sufficient facts to support a viable claim of control. *See Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (owner of company maintained responsibility for all employment matters, insisted on classifying individuals as independent contractors, and directed plaintiffs to be classified as independent contractors); *Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700 (N.D. Ill. 2016), ECF No. 9, ¶¶ 28-35 (defendant assigned work to plaintiff, told plaintiff when and where to work, paid employees, and hired plaintiff); *Dawkins v. NR 1 Transp., Inc.*, No. 20 C 4063, 2021 WL 4125086, at *4 (N.D. Ill. Sept. 8, 2021) (owner supervised day-to-day operations, decided whether drivers received final paycheck, regularly withheld final paychecks, and in fact refused to issue plaintiff final paycheck). Plaintiffs do not have similar allegations here.

---

[12] Plaintiffs also rely on *Chapman v. Yellow Cab Coop.*, 875 F.3d 846 (7th Cir. 2017), which did not involve joint employment. Even so, the case undermines Plaintiffs' position because the court concluded that plaintiffs' allegations failed to plausibly show an employment relationship. *Id.* at 848-49 (affirming dismissal after plaintiff's "multiple failed efforts to frame a plausible claim").

### 2. Mimic is not an employer under the IWPCA

Similarly, Plaintiffs IWPCA claim against Mimic is based on a sole allegation that "Mimic was aware of and approved the illegal deductions and withholdings." *Am. Compl.* ¶ 205. This assertion, which merely restates the "knowingly permitted" standard under the IWPCA cannot suffice to state a claim for individual liability under the IWPCA. Plaintiffs seek to distinguish *Gibbs v. ABT Elecs., Inc.*, No. 21 CV 6277, 2022 WL 16540182 (N.D. Ill. Oct. 28, 2022), but it is on point with the facts here. In *Gibbs*, the plaintiff alleged that defendants regularly caused him to miss scheduled meal breaks and subjected his pay to automatic deduction for meal breaks that were not taken. *Gibbs v. ABT Elecs., Inc.*, No. 21 CV 6277, 2022 WL 16540182, Dkt No. 19, ¶¶ 161-62 (N.D. Ill. Oct. 28, 2022) (*Gibbs Am. Compl.*). In attempting to impose individual liability on the corporate defendant's owner, Plaintiff alleged that the individual "knowingly caused or permitted these violations to occur." *Gibbs Am. Compl.* ¶ 163. The court granted dismissal of the IWPCA claim against the individual defendant, finding that "[c]onclusory allegations of [the individual defendant's] knowledge cannot suffice." *Gibbs*, 2022 WL 16540182, at *4. Here, Plaintiffs make similar conclusory allegations, alleging that "Mimic was aware of and approved the illegal deductions and withholdings." *Am. Compl.* ¶ 205. These conclusory allegations do not suffice to state a claim for individual liability under the IWPCA.

### III. CONCLUSION

For these reasons, the Court should grant Defendants' motion.

Dated: January 13, 2023                                Respectfully submitted,

*/s/ Charles Andrewscavage*
Charles Andrewscavage
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603
Phone: 312-255-7200
Fax: 312-422-1224
candrewscavage@scopelitis.com

*Attorney for Defendants,*
*Super Ego Holdings, LLC, Floyd, Inc., Kordun Express, Inc., Rocket Expediting, LLC, Jordan Holdings, Inc., Rex Trucking, Inc., Haidar Dawood LLC and Aleksandar Mimic*

4863-1816-7368, v. 14

16