IN THE UNITED DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY ATKINSON, EUGENE WALKER, JASON GREENE, GIOVANNI WILLIAMS, CHARLES CROSS, TERRILL CLAY, RODERICK HALSEY, JAMES THOMAS, CHARLES JULIAN, OGULBIKE IVANOVA, and DMITRY MCCOY on behalf of themselves and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SUPER EGO HOLDING LLC; FLOYD, INC., KORDUN EXPRESS, INC., ROCKET EXPEDITING LLC, JORDAN HOLDINGS, INC. d/b/a/ JHI TRANSPORT; REX TRUCKING, INC.; HAIDAR DAWOOD LLC; TWIN CARRIER, LLC; WINDY CITY NATIONAL TRANS INC.; TRYTIME TRANSPORT LLC; and ALEKSANDAR MIMIC <br><br> Defendants. | Case No. 22-cv-04127 <br><br><br> Hon. Martha Pacold <br><br><br> Hon. Magistrate David Weisman |

## PLAINTIFFS' MOTION TO RESOLVE DISCOVERY DISPUTE

For the past several months, the parties have been negotiating an ESI search protocol for emails, text messages, and other electronic communications sent or received by Defendants' dispatchers and recruiters. Though the parties have resolved many of their disputes related to this search (including proposed search terms and the size of the samples), the parties have not been able to agree on one important issue. While the parties agree that 5% of dispatchers' and 5% of recruiters' communications should be searched (out of more than 3,000 total custodians), Plaintiffs have identified 20 dispatchers and recruiters who they would like to be included in the

5% samples. Defendants, however, will not agree to include as custodians any specific dispatchers or recruiters and want the selection of dispatchers and recruiters to be completely random. Plaintiffs now ask the Court to compel Defendants to search a 5% sample of dispatchers and a 5% sample of recruiters' emails and text messages, *including the 20 dispatchers and recruiters that Plaintiffs have identified*. Plaintiffs have good reason to believe that these 20 dispatchers and recruiters have important information relevant to Plaintiffs' individual claims. Indeed, most of the identified dispatchers and recruiters corresponded extensively with the Named Plaintiffs during the time they worked Defendants.

## I. Factual Background

Plaintiffs filed this putative class action lawsuit on August 5, 2022 alleging claims for breach of contract, fraud, conversion, civil conspiracy, violations of the Truth In Leasing Act ("TILA"), 49 U.S.C. § 14704(a)(2), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/10a, violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/9, and violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 203, *et seq*.[1] Defendants are federally licensed motor carriers, their truck leasing company, their holding company, Super Ego Holding LLC, and the owner of Super Ego, Alexksandar Mimic. Second Amended Complaint ("SAC"), ¶¶ 20-45. Carrier Defendants contract with shippers and buyers, through third-party freight brokers, to transport freight loads at a specified rate. Second Amended Complaint. *Id*. ¶ 39. Carrier Defendants then contract with drivers who own or lease their trucks to haul the loads under one of the Defendants' carrier licenses. *Id*. As is customary in the industry, Defendants split the load rate with drivers at an agreed-upon percentage. *Id*. ¶¶ 4, 61-64.

---

[1] Plaintiffs added the FLSA claims in their First Amended Complaint. ECF 21.

2

On August 14, 2024, Plaintiffs filed their Second Amended Complaint, which added 1) three additional related motor carriers as Defendants, (2) five Named Plaintiff drivers, (3) allegations in support of their fraud and ICFA claims, and (4) additional claims against Aleksandar Mimic, and which Defendants opposed. Second Amended Complaint ("SAC"), ECF 142.

Plaintiffs' claims most relevant to this Motion are their FLSA minimum wage claims and their fraud claims. The FLSA claims allege that Defendants controlled the terms of Plaintiffs' work (in large part through the dispatchers), thus misclassifying Plaintiffs as independent contractors. The FLSA claims also allege that Defendants routinely paid Plaintiffs less than the minimum wage. *Id*. ¶¶ 142-153. In fact, in some weeks Defendants paid Plaintiffs no wage at all. *Id.*

The fraud claims allege that Defendants lied to Plaintiffs during recruiting process and then, once they were hired, sent Plaintiffs altered rate confirmation forms. *Id*. ¶ 185. Defendants engaged in recruiting fraud by inducing drivers to come to Illinois with a false promise to pay them 88% of the revenue from each load they hauled. *Id*. ¶¶ 58-67. Recruiters made the false statements via e-mail or text. Drivers then spent money traveling to Illinois and then entered into lease-purchase agreements for trucks, which required large down payments. *Id*. ¶¶ 68-83. Defendants engaged in rate confirmation fraud by secretly altering the price on brokers' third-party rate confirmation sheets. *Id*. ¶¶ 84-109. The dispatchers then sent the falsified and secretly-altered rate confirmations to the drivers via e-mail or text message, misrepresenting to drivers that the price of loads were far lower than they really were. *Id.*

3

## II. Procedural History

On April 29, 2024, the Court entered the parties' agreed Discovery Plan For Electronically Stored Information. ECF 114. At the time, Plaintiffs' Motion for Leave to File Second Amended Complaint was pending. The ESI protocol provided for two phases of written discovery. In Phase 1, Defendants would produce the following: (1) documents and data relevant to Plaintiffs' alter ego and joint employer theories of liability, such as corporate tax returns; 2) load pay data; 3) wage data (including deductions and drivers' hours of service data); 4) data related to escrow accounts; 5) fuel discount data. They would also produce documents related to the Named Plaintiffs. The parties deferred Phase 2 until after the Court ruled on Plaintiffs' Motion to file a Second Amended Complaint. Phase 2 would include Defendants' emails and text messages.

On October 31, 2024 Minute Entry (Dkt. 155), the Court set the following deadlines: Defendants to complete production of Round 1 documents by November 12, 2023; Defendants to amend their supplementary Interrogatory Answers and respond to Plaintiffs' custodian sampling proposal by November 6, 2024; and the parties to submit any disputes to the Court by November 25, 2024.

### III.  Local Rule 37.2 Statement[2]

The parties have been negotiating custodians for Defendants' Round 2 production. As part of the custodian selection process, Plaintiffs proposed that Defendants search the ESI of a 5% sample of their recruiters and a 5% sample of their dispatchers. On October 22, 2024, the parties met and conferred by videoconference regarding this proposal. Ex. A, Counsel's October 23, 2024 – November 12, 2024 Email Exchange. On November 8, 2024, Defendants counter-offered to search 5% of recruiters and 2% of dispatchers' email addresses, citing burden concerns and stating that there are over 3,000 dispatchers. *Id*. On November 12, 2024. Plaintiffs accepted the counter proposal under the condition that Plaintiffs could choose the dispatcher custodians. *Id.*

On November 21, 2024, the parties met and conferred by videoconference regarding the sampling proposal. Emily Brown and Christopher Wilmes attended for Plaintiffs, and David Krueger and Jordan Call attended for the Defendants. Plaintiffs explained that they have identified dispatchers who participated in the alleged "rate confirmation fraud" by talking to witnesses and reviewing their clients' emails and text messages. Plaintiffs further explained that they want to ensure those dispatchers are included in the sample of dispatcher custodians. On November 25, 2024, Defendants sent a follow up email stating that they would agree to 5%

---

[2] On March 8, 2024, Plaintiffs filed a Motion to Compel, which the Court granted in part and denied in part. ECFs 99, 126, 127. As part of the Motion to Compel proceedings, Defendants agreed or were ordered to provide supplemental responses to eight of Plaintiffs' Interrogatories. ECFs 121 (Plaintiffs' Reply), 127. On October 14, 2024, Defendants provided supplemental responses to their Interrogatory answers. The supplemental interrogatory answers do not provide the names and contact information of Defendants' recruiters and dispatchers, as Plaintiffs requested, and instead provide the names of third-party companies in Serbia that paid Defendants' dispatchers and recruiters. The answers also do not provide a complete list of Defendants' managers. Plaintiffs have agreed to defer any disputes about the Amended Interrogatory Answers until after they review the emails produced during Round 2.

random samples for both dispatchers and recruiters. Ex. B, Counsel's November 25, 2024 Email Exchange. Plaintiffs responded that the proposal was acceptable, provided the dispatcher sample includes a list of 20 specific dispatcher custodians Plaintiffs provided in their email. *Id*.

Plaintiffs also sought to confirm that for each custodian, Defendants would search all email addresses, text messages, Slack or other messaging platforms, as well as social media the custodian used in their work for Super Ego. *Id*. Plaintiffs also asked to confirm that the samples would include individuals who worked for Defendants for at least six months and at periods spread throughout the class period. *Id*. Defendants responded that they would not agree to the Plaintiffs' proposal, stating that the 5% samples should be completely random. *Id*. The parties have now confirmed they are at issue. *Id*.

Accordingly, after consultation by videoconference and good faith attempts to resolve this dispute, the parties are unable to reach an accord.

**IV.     Argument**

Rule 26(b) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . ." Here, there is little disputing that emails from the 20 proposed custodians satisfy this standard.

The custodians communicated with the Named Plaintiffs on a daily basis, providing them instructions about their work, telling them where to haul their loads, what time to be at certain locations, and how to handle breakdowns with their truck. The dispatchers also communicated with Plaintiffs about load prices and emailed or texted them altered rate confirmation and dispatch documents. In addition, former Super Ego employees have informed Plaintiffs' counsel that some of the 20 proposed custodians were supervisors, who likely sent communications that are substantively different from traditional front-line dispatchers and recruiters. The supervisor

6

emails may tend to support Plaintiffs' allegation that it was the company's policy and practice to lie to drivers about the price of loads and control the terms and conditions of their employment. In short, these 20 custodians' communications bear directly on the FLSA and fraud allegations.

Courts have opined that the initial stage of ESI discovery should focus on core custodians likely to provide relevant information, and the 20 individuals who Plaintiffs have selected certainly fit that description. *See The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery August 2007 Public Comment Version*, 8 Sedona Conf. J. 189, 214 (2007) ("Focusing on information collected from the core custodians, which has a higher likelihood of being relevant, will help the team efficiently develop its understanding of the issues and language used by the custodians, thus allowing them to more efficiently develop and implement an appropriate search and retrieval process."); *see also City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, No. CIV.A. 12-05275 MCA, 2015 WL 5055241, at *4 (D.N.J. Aug. 21, 2015) ("In the Court's considered view, permitting this limited number of additional custodians . . . and permitting plaintiffs to select those custodians would balance fairly plaintiffs' rights to relevant discovery against the costs and burden to defendants of providing that discovery."); *Kleen Products LLC v. Packaging Corp. of America*, 2012 WL 4490465, at *15 (N.D. Ill. Sept. 28, 2012) (allowing Plaintiffs to select additional custodians and stating, "The selection of custodians is more than a mathematical count. The selection of custodians must be designed to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant period."). The custodians are either supervisory employees, long term dispatchers, or individuals who had one-on-one communications with the Named Plaintiffs. They should be included in any ESI search.

7

Importantly, there is no additional burden for Defendants to search these 20 custodians as part of the samples. Defendants have already agreed to search a specific number of dispatchers' and recruiters' ESI, and Plaintiffs' proposal does not increase that number. Moreover, Plaintiffs' request is eminently reasonable considering that they are agreeing to accept a small subset of potentially relevant ESI for dispatchers and recruiter communications. The only conceivable reason that Defendants will not agree to search these 20 custodian's communications – given the lack of additional burden – is because they are concerned the communications will turn up unfavorable evidence. This is not a legitimate reason to refuse discovery requests.

Finally, for the randomly selected dispatchers and recruiters, the duration and time period conditions also are important because in order to certify the class, Plaintiffs must show the illegal conduct was widespread and occurred throughout the class period. Electronic communications from a dispatcher who worked for the company for a week or less will not provide a meaningful amount of data. Similarly, a random sample of dispatchers and recruiters who only worked for the company after the lawsuit is filed will not be helpful in terms of identifying illegal practices that pre-dated the lawsuit. The samples should cover dispatchers and recruiters who worked for the company for at least three months and during different time periods, so that the samples are representative of the class period and includes custodians with some minimal amount of ESI.

## Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' motion and permit Plaintiffs to select a total of 20 custodians for the dispatcher and recruiting the samples. For custodians selected at random, the custodians should include only individuals who worked at least three months for Defendants. The samples should also include custodians who worked at various times throughout the class period.

8

Date: November 25, 2024                    Respectfully submitted,


                                           /s/ *Emily R. Brown*
                                           One of the Attorneys for the Plaintiffs


Christopher J. Wilmes
cwilmes@hsplegal.com
Caryn C. Lederer
clederer@hsplegal.com
Charlie Wysong
cwysong@hsplegal.com
Emily R. Brown
ebrown@hsplegal.com
Hughes Socol Piers Resnick & Dym
70 W. Madison St., Ste. 4000
Chicago, IL 60602
(312) 580-0100

James Stark
jstark@framewills.com
Stark Law Offices, LLC
110 W Roosevelt Rd.
Wheaton, IL 60187
(708) 228-1017